[Cite as *In re C.J.*, 2017-Ohio-8612.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re C.J.

Court of Appeals Nos. L-17-1095
L-17-1098

Trial Court No. JC 16253606

**DECISION AND JUDGMENT**

Decided: November 17, 2017

* * * * *

Laurel A. Kendall, for appellants.

Carmille L. Akande, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** This is an appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which awarded permanent custody of the minor child, C.J., to appellee, Lucas County Children Services ("LCCS"), thereby terminating the parental

rights of mother-appellant, V.B., and father-appellant, A.J. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} The child at issue in this case, C.J., is the sixth of mother's seven children. Testimony from the trial on the motion for permanent custody reveals that LCCS became involved with mother and her four oldest children in November 2012, based upon concerns that mother's then husband left the children home alone, as well as concerns of neglect and domestic violence between mother and her husband. LCCS subsequently received a referral regarding mother's failure to meet the medical needs of her second oldest child by missing doctor's appointments and by not administering medication appropriately. LCCS initially opened the case as an alternative resolution. In April 2014, after approximately one and one-half years with little progress, LCCS filed a complaint in dependency and neglect for mother's now five children, and the court found them to be neglected children. The agency was awarded protective supervision for approximately six months, during which time mother continued to fail to take her children to necessary medical appointments and otherwise meet their medical needs. The agency then moved for and was awarded temporary custody of the children, and the children were placed with the maternal grandmother. Case plan services were provided for mother, including for her to have a diagnostic assessment and follow through on any recommendations, attend her children's medical appointments, and interactive parenting.

2.

**{¶ 3}** Mother completed diagnostic assessments in May 2015, October 2015, and December 2015, but did not attend any mental health services following the assessments. Ultimately, mother failed to make adequate progress on her case plan services, and in May 2016, legal custody of the five oldest children was awarded to the maternal aunt.

**{¶ 4}** During this time, mother gave birth to C.J. in November 2015. C.J. was placed in the temporary custody of LCCS, and has been in the same foster home since his birth.[1] C.J. was adjudicated dependent by the trial court on April 4, 2016. Initially, LCCS sought permanent custody of C.J., but it was later discovered that C.J. had a different father than the other five children. LCCS then amended the plan to provide for the goal of reunification with the parents. Case plan services were continued for mother, including a diagnostic assessment, mental health counseling, and interactive parenting. No case plan services were provided for father as of April 4, 2016, because he was incarcerated.

**{¶ 5}** Initially, mother consistently attended weekly visitations with C.J. In March 2016, the visits became sporadic, and mother stopped attending the visits altogether after August 10, 2016. Mother also failed to complete a diagnostic assessment and follow through with its recommendations in order to reengage with mental health services. On August 15, 2016, LCCS filed its motion for permanent custody of C.J.

---

[1] The maternal aunt was not willing to provide care for C.J., and no other suitable and willing relatives were located on mother's or father's side.

**{¶ 6}** Despite numerous attempts, the LCCS caseworker did not have any contact with mother between September 2016 and November 2016, when mother called to inform the caseworker that she was pregnant. Mother indicated that she had engaged in counseling and believed that she had changed, and wanted to participate in the needed services in an effort to keep her unborn child. Mother stated that she had moved back home, and was receiving support from her family. However, the caseworker was unable to complete a home visit because the maternal grandmother would not allow LCCS in the home. During their November 2016 conversation, mother and the LCCS caseworker also spoke about C.J., and mother indicated that she felt that C.J. was in a good place with his foster family and needed to remain with that family.

**{¶ 7}** Mother's seventh child, C.B., was born in December 2016. As with C.J., temporary custody of C.B. was awarded to LCCS, and he was placed with a foster family, different than the one that C.J. was placed with. Mother began attending weekly visits with C.B. in December 2016. In January 2017, she also restarted simultaneous visits with C.J. Those visits continued up to the trial on the permanent custody motion in March and early April.

**{¶ 8}** By all accounts, mother is progressing in her case plan services. Mother's counselor testified that they have met on eight occasions, and mother has been open and engaging, and has been applying the information she has learned in their sessions. In addition, mother is successfully matriculating through a domestic violence survivor's program offered by Project Genesis. A Project Genesis outreach worker testified that

4.

mother has completed phase one of the program, and has been participating appropriately each week. Of note, mother has not completed an interactive parenting course, but testimony from the trial revealed that LCCS will not refer a person for interactive parenting while a permanent custody motion is pending. However, the LCCS caseworker testified that she gave mother the information for a place that mother could call to enroll in an interactive parenting class.

{¶ 9} As to father, the testimony revealed that he has only visited C.J. two times, and left early on the second visit. He has not participated in any case plan services, stating that he was doing other things through his probation. Furthermore, father was incarcerated at the time of the trial, and was awaiting sentencing on several felony charges.

{¶ 10} Finally, the guardian ad litem testified that it would be in the best interest of C.J. for permanent custody to be awarded to LCCS. The guardian testified that based on mother's history, he would be concerned that mother would continue to engage in the necessary services to be able to parent the child. In addition, the guardian testified that mother almost missed a November 2016 pretrial in the permanent custody case because she forgot, and also missed a 90-day review meeting with the guardian and caseworker in January 2017. The guardian believed those failures were indicative of mother's ability to meet the needs of C.J.

5.

**{¶ 11}** Following the presentation of evidence, the trial court granted LCCS' motion for permanent custody of C.J.[2]  The trial court found as to mother that despite reasonable case planning and diligent efforts by LCCS to help mother remedy the problems that caused C.J. to be removed, mother has failed continuously and repeatedly to remedy those problems.  Further, the trial court found that mother has demonstrated a lack of commitment towards C.J. by failing to regularly support, visit, or communicate with the child when able to do so.  As to father, the trial court made the same findings, and additionally found that his repeated incarceration prevents him from providing care for C.J.  Finally, the trial court found permanent custody to LCCS is in the best interest of C.J.  The trial court memorialized its findings in a judgment entered on April 11, 2017.

## II.  Assignments of Error

**{¶ 12}** Mother and father have timely appealed the trial court's April 11, 2017 judgment, and now assert two assignments of error for our review:[3]

> 1.  The trial court erred by refusing to extend temporary custody for C.J., (dob 11/18/15), based on appellant V.B.'s significant efforts towards her case plan services prior to the dispositional hearing, and as allowed by the court for [C.B.].

---

[2] The court denied LCCS' motion for permanent custody of C.B., and extended temporary custody for six months, with a pretrial to be held on August 17, 2017.  C.B. is not the subject of this appeal.

[3] Mother and father are represented by the same appellate counsel, who filed one brief jointly on their behalf.

6.

2. The trial court erred in granting appellee Lucas County Children Services Board's motion for permanent custody of C.J. (dob 11/18/15) as against the manifest weight of the evidence.

### III. Analysis

{¶ 13} Because appellants' assignments of error are interrelated, we will address them together.

{¶ 14} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

{¶ 15} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate

7.

the testimony.  *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994).  Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 16} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child,

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent if any of sixteen factors are met.  Here, the trial court found that R.C. 2151.414(E)(1) and (4) applied to both parents, and R.C. 2151.414(E)(13) applied to father.  Those sections provide:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the

8.

agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

{¶ 17} We will begin by briefly addressing the trial court's findings relative to father, and because R.C. 2151.414(B)(1)(a) is satisfied if one of the factors in R.C. 2151.414(E) applies, we will limit our discussion to R.C. 2151.414(E)(13). In reaching its decision, the trial court reasoned that father was incarcerated during the early part of

9.

C.J.'s case, and at the time of trial was again incarcerated and awaiting sentencing on several felony charges. In addition, father himself has acknowledged that he is unable to care for C.J. as a result of his incarceration, and he does not contest the trial court's finding on appeal. Thus, we hold that the trial court's finding under R.C. 2151.414(E)(13) is not against the manifest weight of the evidence.

{¶ 18} Turning to the trial court's findings regarding mother, we will begin and end our analysis with R.C. 2151.414(E)(4). In finding that section applicable, the trial court commented that mother stopped visiting with C.J. in August 2016, and did not request to see him again until January 2017. The court also noted that mother had recently informed her mental health counselor that it would be best for C.J. to stay in his foster home.

{¶ 19} Upon our review, we find that the record supports the trial court's finding under R.C. 2151.414(E)(4). Although mother has recently begun visiting with and expressing interest in parenting C.J., we cannot overlook the fact that for five months of the young child's life, mother was completely absent. While we are sensitive to mother's feelings of helplessness and futility in the wake of losing custody of her five older children, the facts demonstrate that mother was not committed to C.J. when she could have been. Therefore, we hold that the trial court's finding is not against the manifest weight of the evidence.

{¶ 20} In her brief, mother argues that she has demonstrated real change, and that the court should have granted her additional time to comply with the agency

10.

recommendations and demonstrate her fitness to be a good parent to C.J. Relying on R.C. 2151.414(D)(2), mother contends that she has an additional window to complete her case plan services because C.J. has not been in the custody of the agency for two years. R.C. 2151.414(D)(2) provides,

> If all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:
>
> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.
>
> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.
>
> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

11.

**{¶ 21}** However, mother's reliance on R.C. 2151.414(D)(2) is misplaced. R.C. 2151.414(D)(2), instead of being a requirement for awarding permanent custody, is an "alternative to reaching the best interest determination through the factors in R.C. 2151.414(D)(1)." *In re N.K.*, 6th Dist. Sandusky Nos. S-14-040, S-14-041, 2015-Ohio-1790, ¶ 70, citing *In re K.H.*, 2d Dist. Clark No. 2009-CA-80, 2010-Ohio-1609. *In re K.H.* explained, as to R.C. 2151.414(D)(2),

> [I]f all of the facts enumerated therein apply, then an award of permanent custody is in the child's best interest, and the trial court need not perform the weighing specified in division (D)(1). But if it is not the case that all of the facts enumerated in division (D)(2) exist; that is, if any one of the facts enumerated in division (D)(2) does not exist, then the trial court must proceed to the weighing of factors set forth in division (D)(1) to determine the child's best interest. *In re K.H.* at ¶ 54.

**{¶ 22}** Here, because all of the factors in R.C. 2151.414(D)(2) have not been met, that section does not apply. Nonetheless, the trial court found that permanent custody to the agency was in the best interest of C.J. under R.C. 2151.414(D)(1). The trial court reasoned that C.J. has been with the same foster family since his birth almost 17 months earlier, and he is well-bonded to them. Further, both the caseworker and guardian testified that C.J.'s needs are being met and he is in need of a permanent placement, and that the foster family is interested in adopting C.J. Therefore, we hold that the trial

12.

court's finding that an award of permanent custody to LCCS is in C.J.'s best interest is not against the manifest weight of the evidence.

{¶ 23} Accordingly, appellants' first and second assignments of error are not well-taken.

## IV. Conclusion

{¶ 24} For the foregoing reasons, we find that substantial justice has been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.    _____
                    JUDGE
James D. Jensen, P.J.   

Christine E. Mayle, J.     _____
CONCUR.                JUDGE

                  _____
                    JUDGE

13.