[Cite as *In re M.R.*, 2019-Ohio-3601.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re May.R., Mak.R.

Court of Appeals Nos. L-19-1030
L-19-1039

Trial Court No. JC 17265056

**DECISION AND JUDGMENT**

Decided: September 6, 2019

* * * * *

Laurel A. Kendall, for appellants.

Bradley W. King, for appellee.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is a consolidated appeal from a judgment of the Lucas County Court of

Common Pleas, Juvenile Division, which terminated the parental rights of appellant-

father and appellant-mother to the subject minor children, May.R. and Mak.R., and

granted permanent custody to appellee, Lucas County Children Services Board. For the

reasons set forth below, this court affirms the judgment of the juvenile court.

**{¶ 2}** The following facts are relevant to this appeal. For clarity we note the record shows the same juvenile court case for May.R. and Mak.R. involved a third child of the appellant-mother with a different father, and neither the third child nor the third child's father are parties to this appeal. Accordingly, we limit our discussion to the juvenile court case as it relates to May.R. and Mak.R.

**{¶ 3}** On October 2, 2017, appellee filed a complaint in dependency and neglect, and a motion for shelter hearing, regarding May.R. and Mak.R. Since July 14, 2017, appellee was involved with appellants' family when Sylvania Township police reported appellants, the parents of May.R. and Mak.R., for intoxication. The police reported finding the home dirty and unkempt. In the case of appellant-father, the police reported he admitted to smoking crack cocaine. The police also arrested appellant-father for an outstanding commitment order from a 2011 domestic violence charge. At the time of the complaint May.R. was two years old and Mak.R. was 10 months old.

**{¶ 4}** Appellee offered services to both appellants, and they failed to follow those service recommendations. By September 18, 2017, appellant-father had continued his involvement in the criminal justice system, and appellant-mother admitted herself to Flower Hospital's psychiatric unit. By October 1, 2017, both appellants were arrested on charges of domestic violence, and the paternal grandmother to the children refused to allow appellants to remain with her any longer. At the October 2, 2017 shelter care hearing, the juvenile court granted initial temporary custody of the children to appellee.

2.

**{¶ 5}** At the subsequent shelter care hearing, the appellants stipulated to the allegations in appellee's complaint, to appellee's temporary custody of the children, and to their individual case plans for services. The juvenile court then adjudicated the children were neglected by clear and convincing evidence. The juvenile court further determined it is in the best interests of the children to grant temporary custody of the children to appellee effective November 14, 2017, with the goal of reunification as stated in appellee's case plans for each appellant. The transcript of the November 14, 2017 hearing is in the record, and the juvenile court's judgment entry was entered in the record on December 12, 2017.

**{¶ 6}** Following a period of discovery and pre-trial hearings, on April 20, 2018, appellant-father filed a motion for legal custody of the children because he "has done everything needed to be awarded legal custody of his children and there is no reasonable basis to delay reunification of the minor children and their Father."

**{¶ 7}** Then on August 10, 2018, pursuant to R.C. 2151.23, 2151.413, and 2151.414 appellee moved for permanent custody of the children with the permanency plan being reunification and legal custody. In addition, pursuant to R.C. 2151.353, appellee moved for temporary custody of the children. Appellee alleged the children could not be placed with appellants within a reasonable time or should not be placed with appellants pursuant to R.C. 2151.414(E)(1), (2), (4) and (14) and that permanent custody is in the children's best interests pursuant to R.C. 2151.414(D).

3.

{¶ 8} Appellants repeatedly failed to follow their case plan treatment services for domestic violence, substance abuse, mental health, and housing. Appellant-father attended only 7 out of 19 mental health appointments, refused to comply with random drug screens, and failed to complete domestic violence treatment. Appellant-mother sporadically attended and failed to complete her mental health treatment case plan, and stopped attending domestic violence treatment in May 2018. On June 6, 2018, appellant-mother called police that appellant father was intoxicated and had an open warrant. On June 9, 2018, appellant-mother was arrested for domestic violence against appellant father.

{¶ 9} The juvenile court held a hearing on October 1, 2018, on appellee's motion for temporary custody of the children. The transcript of the hearing is not in the record, but the court's October 9, 2018 judgment entry is. The juvenile court granted appellee's motion with the permanency plan being reunification and legal custody, subject to the pending custody motions.

{¶ 10} The dispositional hearing/trial on the pending permanent custody motions was held on January 11, 2019, and the juvenile court heard testimony from various witnesses and admitted evidence in the record. The transcript of the hearing is in the record. By judgment entry journalized on February 6, 2019, the juvenile court granted permanent custody to appellee for adoptive placement and made a number of findings relevant to this appeal.

4.

{¶ 11} Pursuant to R.C. 2151.414(B)(1)(a), the juvenile court found by clear and convincing evidence the children could not be returned to appellants within a reasonable period of time and that an award of permanent custody is in their best interests.

{¶ 12} Pursuant to R.C. 2151.414(E)(1), the juvenile court found by clear and convincing evidence that despite "reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home." In the 14-month period since case plan services were ordered by the juvenile court, the appellants admitted they did not complete their case plans. Specifically, the juvenile court found "that even with domestic violence education course the parents have failed to remedy the conditions that led to the removal of the children."

{¶ 13} Pursuant to R.C. 2151.414(E)(2), the juvenile court found by clear and convincing evidence that appellants' chronic mental illness, emotional illness, or chemical dependency is so severe that they cannot provide an adequate permanent home for the children or within one year pursuant to R.C. 2151.414(E)(2)(A) or 2151.353(A)(4). Both appellants admitted to not completing their mental health care plans. In addition, both appellants "have demonstrated an inability to internalize how their mental health affects their ability to parent the children" and "failed to provide any reasonable explanation as to why their attendance in mental health treatment was so

5.

sporadic." Appellant-father also admitted to two arrests for driving under the influence and tested positive for cocaine while also refusing to provide regular drug screens.

{¶ 14} Pursuant to R.C. 2151.414(E)(4), the juvenile court found by clear and convincing evidence that appellants "have demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so." Appellant-father failed to consistently visit the children and was frequently late when he did. Appellant-mother was more consistent with her visitations, but she refused to consistently attend her mental health treatment and secure stable and appropriate housing. In the eight locations appellant-mother lived during the pendency of this case, she "would willfully leave shelters or would be kicked out * * * [and] was also evicted several times * * *." The juvenile court found appellant mother "simply lacked the commitment to her services and failed to provide the safety and stability these children desperately need."

{¶ 15} Pursuant to R.C. 2151.414(D)(1)(a), the juvenile court found by clear and convincing evidence the "testimony overwhelmingly shows that the children have been safe and stable in their placement with the caregivers." The children are "thriving" in their placements without the parents after they "finally experienced some stability."

{¶ 16} Pursuant to R.C. 2151.414(D)(1)(d), the juvenile court found by clear and convincing evidence:

> Unfortunately, the parents have simply not demonstrated any ability whatsoever to provide an adequate home for the children. Though services

6.

were put in place to address the issues leading to removal, the parents have admittedly not completed their case plan. No reasonable explanations were offered at trial for this lack of follow-through. Given the vulnerability of these children, the parents' lack of commitment, and the need for a safe and stable home – the Court has no choice but to find that permanent custody is in the children's best interest.

{¶ 17} It is from the juvenile court's February 6, 2019 judgment entry which appellants filed their separate appeals.

{¶ 18} Appellant-father set forth two assignments of error:

I. The trial court abused its discretion by not extending the period of temporary custody to Lucas County Children Services Board when he had arguably completed his case plan services, had stable living arrangements at the time of trial, and was making progress with his mental health.

II. The state did not provide by clear and convincing evidence that father: (i) failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the family home pursuant to R.C. 2151.414(E)(1); (ii) suffers from chronic mental illness or chemical dependency that is so severe that he is unable to parent his children pursuant to R.C. 2151.414(E)(2); (iii) has demonstrated a lack of

7.

commitment to the children pursuant to R.C. 2151.414(E)(4); and (iv) the children cannot be placed with him within a reasonable time pursuant to R.C. 2151.414(B)(1)(a).

{¶ 19} Appellant-mother set forth three assignments of error:

I.  The trial court abused its discretion by not extending the period of temporary custody to Lucas County Children Services Board when mother had arguably made significant progress with her case plan services, had stable housing and employment, and was making progress with her mental health.

II.  The state did not provide by clear and convincing evidence that mother:  (i) failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the family home pursuant to R.C. 2151.414(E)(1); (ii) suffers from chronic mental illness or chemical dependency that is so severe that she is unable to parent her children pursuant to R.C. 2151.414(E)(2); (iii) has demonstrated a lack of commitment to the children pursuant to R.C. 2151.414(E)(4); and (iv) the children cannot be placed with her within a reasonable time pursuant to R.C. 2151.414(B)(1)(a).

III.  The agency/GAL recommendation that mother leave father in order to improve her chances of reunification is plain error as against public policy.

## I. Continuance

{¶ 20} Both appellants argue in their first assignments of error the juvenile court should have granted extensions to the period of temporary custody by appellee. We will address these assignments of error together.

{¶ 21} In support of his first assignment of error, appellant-father argues the juvenile court should have granted a temporary custody time extension for up to six months pursuant to R.C. 2151.415(D)(1). He argues he either "arguably completed" or made "substantial progress" towards completing his case plan services for mental health, housing and domestic violence. He further argues "he believed he could achieve within six months from the trial date" completion of his case plan services, including finding suitable housing and grief counseling "in order to demonstrate his ability to maintain his sobriety."

{¶ 22} In support of her first assignment of error, appellant-mother argues the juvenile court should also have granted a temporary custody time extension for up to six months pursuant to R.C. 2151.415(D)(1). Appellant-mother argues she made "substantial progress" in her case plan services for mental health, domestic violence, and housing, given her employment and transportation options. She further argues "an extension of time to finalize stable housing in her own name is in the best interests of the children."

{¶ 23} Appellee responded the trial court did not err. Appellee argued appellants provided no support for a second six-month extension "when they were unable to [complete their case plan services] in the previous 15 months leading up to the permanent

9.

custody hearing." Appellee argued that while appellants pointed to recent deaths in the family as disrupting their case plans, the juvenile court correctly pointed to each appellant's need to comply with their case plan services existed before the deaths in the family.

{¶ 24} Despite appellants' arguments, we reviewed the record and do not find that either appellant orally requested appellee extend temporary custody of the children at the January 11, 2019 dispositional hearing/trial in this matter. In addition, R.C. 2151.415(D)(1) concerns appellee, not appellants, requesting to extend appellee's temporary custody of the children. Appellee did not make a second request at the dispositional hearing.

{¶ 25} Rather, the record shows appellants each made oral requests for continuances at the start of the dispositional hearing. We review the grant or denial of a continuance for an abuse of discretion. *In re Edward M.*, 6th Dist. Lucas Nos. L-04-1282, L-04-1304, 2005-Ohio-3354, ¶ 21, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 26} The transcript of the January 11, 2019 dispositional hearing indicates appellant-father knowingly decided to represent himself pro se at the hearing. Despite deep concerns expressed on the record, the juvenile court accepted his decision and

10.

learned he had prepared for the hearing with notes on his cell phone. When appellant-father asked for a continuance "to bring people into court," the juvenile court denied the motion: "No, I am not going to continue this case. This is something that you could have raised with me before today. But I'm not going to continue the case now that we're all here for trial. * * * That's not in your children's best interests." Appellant-father replied, "Okay. I understand that."

{¶ 27} The dispositional hearing transcript indicates appellant-mother also requested a continuance at the start because she did not meet with her attorney prior to the hearing. Appellant-mother finally contacted her attorney the day before the hearing, "So we haven't had adequate time to actually subpoena witnesses to go forward to trial." Appellant-mother used a Wi-Fi phone where her attorney could not reach her. Her attorney stated, "She never actually told me [she could not meet], Your Honor. She just would never set a date." The juvenile court denied the motion:

No, the continuance * * * is going to be denied. Look, this pretrial was set – this was October 16th. This case has been going on since October of 2017. It's almost a year and-a-half old, and there is no reason that between October and now if your phone didn't work for three months that you couldn't have written [your attorney] a letter or something if you really, really wanted to get in touch with him. So, no, I'm not granting a continuance. Whether I grant permanent custody or not, either way, these

11.

children need some stability and permanency, and I'm not going to drag it out for them anymore, no.

{¶ 28} The transcript also shows that during appellant-father's direct examination by his standby attorney and during appellant-mother's direct examination by her attorney, each gave new reasons for a continuance in order to make more progress on their individual case plans. However, neither renewed their motions for a continuance after the court's denial. In addition, neither the caseworker nor the guardian ad litem for the children recommended a continuance because appellants failed to make the progress with their case plans they claimed to have made.

{¶ 29} Even if we deem the appellants had renewed their motions for a continuance, the juvenile court denied them with the findings to support the decision on permanent custody:

I mean, Dad, I'm very concerned about your current alcohol use and/or cocaine use. This started with using crack cocaine way back and alcohol, I read. I don't understand why you, at a time when you need to prove that you're doing well, that you would not drop, provide drops when you were requested by the caseworker. And when you did, you tested positive just a month and-a-half ago for cocaine. I'm so glad that you're in grief counseling. You clearly do need that. My heart goes to you with all of your losses, because at least two of them were very tragic. And I can't ignore the fact, though, that your mental health issues began prior to the

12.

loss of these people who were close to you. And I'm guessing that the issues have been exacerbated, meaning gotten worse because of these deaths. You did miss a lot of meetings with your doctor at Zepf. And you indicated that * * * some you just forgot a lot of times, but you did miss some. And my understanding from the exhibit that you provided * * * I'm not sure [the 20-minute medical appointment doctor is] really in a position to say that you * * * would be able to have custody of your children and be safe with them. And he didn't say that. He said he didn't have any reason to think you would not be able to be around them. Those are different things.

The housing is still not stable. I know you're looking for a place. Mom doesn't get along with your mom. That's what I heard today. * * *

Mom, you just don't go to mental health treatment. And when you talk about getting your treatment by being on the phone with your therapist, that's not treatment. And I really struggle with so many of the excuses and, frankly, lies that have come across from you today. When you say you can't get to treatment, you have a family car but you have to pick between treatment and visits. That makes no sense. * * * You have been doing visits all along, all along. * * * [E]arly on when we started, you can't call your attorney but you're able to call your therapist on a regular basis from either work or home? So that wasn't truthful. You haven't been in touch

with your attorney to help him prepare for this case. You blame CSB that they didn't get you all into marriage counseling sooner so now we're doing that on our own. Well, why didn't you do that on your own a long time ago for the sake of your children? There's a lot of things that you both could have and should have done to prove that you really are making a difference in your lives for your children. But at the critical time, particularly since August when this motion for permanent custody was filed and you knew, boy, this is my last chance, I better do it, you didn't. So I am not satisfied that another three or six months would make any difference after a year and-a-half.

{¶ 30} Despite appellants urging us to find they have substantially completed their individual case plans, the record indicates otherwise because they had only recently reengaged in services prior to the dispositional hearing. This court has consistently held that the juvenile court is not required to prolong the custody proceedings for a parent to begin to cooperate in the case planning process. *In re A.A.*, 6th Dist. Lucas No. L-17-1162, 2017-Ohio-8705, ¶ 37.

{¶ 31} We reviewed the entire record and do not find the juvenile court abused its discretion when it separately denied appellant-father and appellant-mother their oral requests to continue the dispositional hearing at the start of the hearing. We do not find the juvenile court's attitude was unreasonable, arbitrary or unconscionable when it refused to delay the dispositional hearing any further.

14.

{¶ 32} Appellant-father's first assignment of error and appellant-mother's first assignment of error are not well-taken.

## II. Permanent Custody Determination

{¶ 33} Both appellants argue in their second assignments of error the juvenile court's decision on the permanent custody of the children was against the manifest weight of the evidence. We will address these assignments of error together.

{¶ 34} Appellant-father argues for his second assignment of error the juvenile court erred by finding clear and convincing evidence to support its permanent custody decision. He argues appellee never required him to attend parenting classes, so his ability to parent the children is not an area of concern. He further argues any lapses in his mental health and substance abuse treatment plans are mitigated by the type of work he did (demolishing crack houses) and by the deaths of his family members within the past year.

{¶ 35} Appellant-mother also argues for her second assignment of error the juvenile court erred by finding clear and convincing evidence. She argues appellee never required her to attend parenting classes, and any lapses in her mental health and domestic violence treatment plans are mitigated by her full-time work with only one vehicle shared by three drivers.

{¶ 36} In response to both arguments, appellee argues the record contains clear and convincing evidence to support the juvenile court's permanent custody award of the children to appellee as being in their best interests.

15.

**{¶ 37}** We review the juvenile court's determination of permanent custody under a manifest weight of the evidence standard. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, ¶ 37. We "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed." *Id.* We are mindful the juvenile court was the trier of fact and was "in the best position to weigh evidence and evaluate testimony." *Id.*

**{¶ 38}** "In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) that permanent custody is in the best interests of the child." *In re C.J.*, 6th Dist. Lucas No. L-17-1095, 2017-Ohio-8612, ¶ 14, citing R.C. 2151.414(B)(1).

**{¶ 39}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus. A judgment on permanent custody supported in the record by some

16.

competent, credible evidence by which the court could have formed a firm belief as to all the essential elements will not be reversed on appeal as being against the manifest weight of the evidence. *In re Denzel M.*, 6th Dist. Lucas No. L-03-1337, 2004-Ohio-3982, ¶ 8. This standard applies to cases decided under either R.C. 2151.353(A)(4) or 2151.414(B)(1)(d). *In re Tiffany Y.*, 6th Dist. Sandusky No. S-03-004, 2003-Ohio-6203, ¶ 12.

## A. R.C. 2151.414(B)(1) Factors

{¶ 40} For the first prong, the record shows the juvenile court determined by clear and convincing evidence the children could not be returned to appellants within a reasonable period of time and that an award of permanent custody is in their best interests pursuant to R.C. 2151.414(B)(1)(a). As stated in R.C. 2151.414(B)(1)(a):

> Except as provided in [R.C. 2151.414(B)(2)], the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to [R.C. 2151.414(A)], by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: (a) the child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months

17.

of a consecutive twenty-two-month period * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 41} Pursuant to R.C. 2151.414(E), in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the juvenile court "shall consider all relevant evidence" by clear and convincing evidence, including whether one or more of the factors described in R.C. 2151.414(E)(1)-(16) exists. Although the juvenile court found many R.C. 2151.414(E) factors to support its holding, it needed to only find one. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50.

{¶ 42} Pursuant to R.C. 2151.414(E)(1), the juvenile court found by clear and convincing evidence that despite case plan services for over 14 months specifically targeting appellants' joint issues of mental health and domestic violence, and, in the case of appellant-father, substance abuse, to remedy the problems that initially caused May.R. and Mak.R. to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy those conditions and failed to demonstrate "any insight as to the issues that led to the removal of the children." R.C. 2151.414(E)(1) states:

> In determining at a hearing held pursuant to [R.C. 2151.414(A)] * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and

convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:  (1) following the placement of the child outside of the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 43} It is undisputed the record shows each appellant stipulated to the juvenile court's November 14, 2017 determination May.R. and Mak.R. were neglected.  It is also undisputed the record shows each appellant stipulated to the juvenile court's orders removing the children from appellants' home and granting temporary custody to appellee. It is also undisputed the record shows each appellant stipulated to the juvenile court's

orders approving appellee's individualized case plans with the goal of reunification. R.C. 2151.412(E). Appellants were bound by the terms of the case plans. R.C. 2151.412(F)(1).

{¶ 44} At the dispositional hearing the appellants admitted they did not complete their case plans while asserting their subject beliefs that they had substantially completed them. Those subjective beliefs were not corroborated by any other evidence in the record. *See* R.C. 2151.412(F)(2). The record showed appellant-father's relapses for substance abuse offenses, domestic violence and mental health issues, and of appellant-mother's relapses for domestic violence and mental health. Appellant-father was arrested for DUI on November 26, 2017; appellant-mother called the police on him for domestic violence on June 6, 2018; he tested positive for cocaine on November 19, 2018; and then he was arrested for DUI again on November 24, 2018. With respect to appellant-mother, although she testified she substantially completed her mental health treatment, she missed about half of her weekly appointments, according to the caseworker. It is undisputed that appellant-mother completed her domestic violence treatment services. However, the record showed she relapsed on domestic violence three times during the course of this case, according to the caseworker: "Based on the behaviors and the contact that I've had with [appellant-mother], it does not seem that she has an understanding of how domestic violence has impacted her and that she minimizes what has happened."

{¶ 45} Both appellants had erratic, unstable housing situations, and during the course of the 14-month case, eight residences were identified in the record. Sometimes

20.

appellants lived together, but often they did not. At the time of the hearing, they were again living together at his mother's residence to the surprise of both the caseworker and the guardian ad litem. The caseworker testified, "Also, it is of a concern that if the parents are living with [appellant-father's] mother, that is where the children were removed from and had incidents. There's been multiple occurrences that [appellant-mother] has informed me of not getting along with [her mother-in-law]."

{¶ 46} Although the juvenile court's finding pursuant to R.C. 2151.414(E)(1) satisfied the requirements of R.C. 2151.414(B)(1)(a), the court made further findings in the record by clear and convincing evidence pursuant to R.C. 2151.414(E)(2) and (4). We will not disturb those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the first prong of a permanent custody determination.

### B. Best Interests of the Children

{¶ 47} For the second prong, the juvenile court must consider "all relevant factors, including, but not limited to" the five enumerated factors described in R.C. 2151.414(D)(1)(a)-(e). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 52. "The statute is written broadly to allow a free-ranging inquiry by the juvenile court judge. All relevant best interests factors are to be considered to allow the judge to make a fully informed decision before terminating parental rights, privileges and responsibilities." *In re Tiffany Y.*, 6th Dist. Sandusky No. S-03-004, 2003-Ohio-6203, at ¶ 13-14. The juvenile court's discretion in determining the best interests of May.R. and

Mak.R. with an order of permanent custody is accorded the utmost respect due to the nature of the proceeding and the impact on the lives of the parties concerned. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, at ¶ 37.

{¶ 48} The record shows the juvenile court determined the best interests of May.R. and Mak.R. after considering R.C. 2151.414(D)(1)(a) and (d), which state:

> In determining the best interest of a child at a hearing held pursuant to [R.C. 2151.414(A)] or for the purposes of [R.C. 2151.353(A)(4) or (5)] or [R.C. 2151.415(C)], the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of a child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child.
>
> * * *
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

{¶ 49} The juvenile court found, pursuant to R.C. 2151.414(D)(1)(a), by clear and convincing evidence May.R. and Mak.R. thrive in their foster caregiver placements because they "finally experienced some stability. These are young children who have spent a significant portion of their lives in substitute care." The record shows the children had been removed from appellant's home for at least 466 days.

22.

{¶ 50} The record shows appellant-mother testified it was in the children's best interests for her to have permanent custody, and appellant-father testified it was in the children's best interests for him to have permanent custody. Each argued they loved the children and would never hurt them. In addition, the caseworker and the guardian ad litem each testified it was in the children's best interests for permanent custody to be awarded to appellee. These witnesses testified that since appellants were unable to follow their individualized case plans and manage their lives, appellants could not also meet the needs of the two small children, who would be entirely dependent on appellants.

{¶ 51} Although the juvenile court's finding under R.C. 2151.414(D)(1)(a) satisfied the requirements of R.C. 2151.414(D)(1), the court made further findings in the record by clear and convincing evidence pursuant to R.C. 2151.414(D)(1)(d). We will not disturb those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the second prong of a permanent custody determination.

{¶ 52} We do not find the juvenile court clearly lost its way to create such a manifest miscarriage of justice as to require reversal of the judgment regarding the permanent custody of May.R. and Mak.R.

{¶ 53} Appellant-father's second assignment of error and appellant-mother's second assignment of error are not well-taken.

23.

### III. Plain Error

{¶ 54} In support of her third assignment of error, appellant-mother argues the juvenile court committed plain error by relying on testimonial evidence suggesting appellant-mother divorce appellant-father for reunification purposes. Appellant-mother argued testimony by the caseworkers and the guardian ad litem indicated appellant-mother's "indecisiveness about staying with father." Appellant-mother argued "she clearly received the message that if she would leave father, she would improve her chances of reunification with the children." Appellant-mother concluded that such suggestion of divorce "as a solution to * * * neglect * * * cases" is contrary to the public policy to sustain marriages.

{¶ 55} In response, appellee argues the juvenile court did not commit plain error. Appellee argues both appellants raised with the guardian ad litem and the caseworker their separate concerns about the other spouse. Appellant-mother said appellant-father was "not good for her and that [she] should not be with him," and appellant-father discussed leaving appellant-mother because of her mental health issues. The guardian ad litem testified "each parent should independently work on their case plan services, rather than focusing on marital qualms" because "reunification with their children had urgency and a distinct timeline." Appellee argues no evidence in the record mentions divorce.

{¶ 56} We review appellant-mother's claim of plain error with utmost caution. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

24.

> In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Id.*, at syllabus. The party asserting plain error has the burden of proving the error affected the outcome of the proceeding, i.e., that appellee would not have been granted permanent custody of the children but for the error. *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 52.

{¶ 57} In support of this assignment of error, appellant-mother points to her direct examination regarding her housing situation during the pendency of this case. She testified, "I was told if I went to the shelter and tried to get housing on my own, that I would get a six-month extension, and someone would put in for a six-month extension. They've been trying to get me and my husband to leave each other since day one, telling us it's a race to the finish line." She then described her departures from her various housing situations as being motivated either by irritation at strict rules in shelters, evictions by landlords or transportation difficulties, not because of pressures to divorce her husband.

**{¶ 58}** The caseworker testified, "I've consistently told her I am not going to tell her to leave him or to stay, that is up to her." According to the caseworker, appellant-mother and appellant-father separately raised the issue of their problematic marriage:

From the beginning of this case, I can remember the first few visits [appellant-mother] mentioned not being able to say things in front of him. But moving forward it has been consistent up and down of whether she was going to stay with him or that she was going to leave. On the other end of that, [appellant-father] has also mentioned that, you know, him being alone might be best or that, you know, he has concerning (sic.) behaviors for [appellant-mother] as well. * * * He has stated to me, I believe it was in December, that he * * * and I quote him saying, "lost in the sauce" for [appellant-mother]. And that's when he mentioned that perhaps it's better for him to be alone at that time. And he also mentioned that there's been an incident of her accusing him of cheating and sniffing his crotch at that time. So I think it's been a constant up and down with them as well as the housing situation. It's never been clear if [appellant-mother] is with [appellant-father] or if she is not with [him].

**{¶ 59}** The guardian ad litem testified that appellant-mother "has said I can't be with my husband, he's not good for me, and then she goes back to him. There's been at least two police phone calls regarding domestic violence involving mom either as a victim or as a perpetrator of it. * * * [T]o me, the issues that caused this case to be

brought into the court still exist today." The guardian ad litem further testified, "With mom I've had many conversations with her about how I don't believe that dad is good for her mental health because he spirals, she spirals. But she has chosen to stay with him, which is her choice, and that is fine but I do not see the progress being made that I think she can make on her own."

{¶ 60} Contrary to appellant-mother's claims, we do not find any witnesses advocated appellant-mother divorce appellant-father as a means of reunification of the children. Both the caseworker and the guardian ad litem lauded appellants' efforts to engage a marriage counselor, but no appointment was scheduled at the time of the hearing. In addition, the trial court's judgment entry made no finding of fact in reliance on any inference of appellant-mother divorcing appellant-father.

{¶ 61} We reviewed the entire record and do not find appellant-mother met her burden demonstrating plain error existed in this case making this the exceptional circumstance. We do not find the juvenile court's decision granting permanent custody of May.R. and Mak.R. to appellee was in reliance on the appellants divorcing each other.

{¶ 62} Appellant-mother's third assignment of error is not well-taken.

{¶ 63} On consideration whereof, we find the judgment of the juvenile court terminating appellants' parental rights and granting permanent custody of May.R. and Mak.R. to appellee was supported by clear and convincing evidence. The judgment of

27.

the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.               _____
                                        JUDGE

Christine E. Mayle, P.J.

_____
Gene A. Zmuda, J.                                  JUDGE
CONCUR.

_____
                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.