[Cite as *In re P.G.*, 2020-Ohio-1416.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re P.G.

Court of Appeals No. L-19-1246

Trial Court No. JC 19275631

**DECISION AND JUDGMENT**

Decided:  April 10, 2020

* * * * *

Laurel A. Kendall, for appellant.

Bradley W. King, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant-father, S.V., to the subject minor child, P.G., and granted permanent custody to appellee, Lucas County Children Services Board.  The mother of P.G., whose parental rights were also terminated, did not appeal the judgment, and our discussion will be limited to the

appellant-father. For the reasons set forth below, this court affirms the judgment of the juvenile court.

{¶ 2} The following facts are relevant to this appeal.

{¶ 3} On July 15, 2019, appellee filed a complaint in dependency and neglect, and a motion for shelter care hearing regarding P.G. Appellee was previously involved with appellant's family culminating in April 2019 when mother and appellant-father had their parental rights terminated to a total of three siblings of P.G., one of whom is a full sibling. Appellee also investigated and substantiated allegations by one of these children of sexual abuse by appellant-father. During that prior case, the parents concealed from appellee the birth of P.G. in Kentucky. In this case, both parents were arrested on July 12, 2019, by Toledo police for a variety of outstanding warrants, and an unidentified relative then brought P.G. to appellee on July 14, 2019. At the time of the complaint P.G. was 16 months old. The juvenile court immediately granted initial temporary custody of the child to appellee, who was placed in temporary foster care with her full sibling from the prior case.

{¶ 4} On August 9, 2019, appellant-father filed a pro se motion seeking permanent custody of P.G. The juvenile court appointed an attorney for him, and the disposition of P.G.'s custody status and appellant-father's motion were consolidated for a hearing on October 2, 2019.

{¶ 5} Meanwhile, on September 17, 2019, the juvenile court adjudicated P.G. a dependent and neglected child by clear and convincing evidence pursuant to R.C.

2.

2151.03(A)(2) and 2151.04(C) and (D). The journalized judgment entry was filed on October 1, 2019. According to the hearing transcript in the record, the ongoing worker who began working with the family in January 2018 and the assessment worker for the family in this case each testified regarding the allegations in the complaint. The juvenile court also admitted evidence in the record.

{¶ 6} At the subsequent dispositional hearing to determine permanent custody of P.G., the juvenile court heard additional testimony from witnesses and admitted evidence in the record. The transcript of the hearing is in the record.

{¶ 7} In response to appellant-father's motion seeking permanent custody of P.G., the ongoing worker testified as follows:

Q: Has he, during his recent appearance, come to you and said what do I need to do to get [P.G.] back?

A: No.

Q: Has he asked you if there were any services at all even if you weren't going to make a referral?

A: No.

Q: Has he inquired about [P.G.] and her future in any way?

A: He has reported that he would like her in his home.

Q: Okay. Other than that, has he done anything to assist you in making that wish of his possible?

A: No.

3.

{¶ 8} The ongoing worker further testified that appellant-father, who never participated during the two years of the prior case where his parental rights to P.G.'s full sibling were terminated, suddenly in the months immediately prior to the October 2, 2019 hearing had begun consistently attending supervised visits with P.G. However, his visit on the same day as the dispositional hearing never occurred because law enforcement during the screening process asked him to leave "due to smelling like weed and that he dropped a blunt in the hallway."

{¶ 9} The witness also testified that appellant-father self-reported "that he attended a few AA meetings, but nothing further." She was not aware of his alcohol abuse problems, and he did not show any interest in appellee offering him case plan services. In the prior case, services were offered to appellant-father for two years without success. During the prior case, one of the three children removed from custody, P.G.'s older sister through their mother, alleged appellant-father sexually abused her and her sister. Appellee substantiated the allegations by a subsequent investigation, although formal charges were not filed.

{¶ 10} After appellant-father was released from jail, there was one home-visit in August, and the witness conceded it appeared to be appropriate for a child.

{¶ 11} The ongoing worker testified P.G.'s interim foster family is the same foster family who is adopting P.G.'s full sibling, and the family is also interested in adopting P.G. so the siblings can further bond as they grow up. Nevertheless, if a suitable relative

4.

could be located, the ongoing worker testified that remains a viable option as a post-permanent custody placement for adoption.

{¶ 12} Appellant-father testified that although P.G. was removed from his apartment upon his arrest, he has everything she needs. He is employed full-time at a restaurant and believes he earns enough to support him and P.G. He further testified that although he would accept case plan services offered to him in order to get his daughter back, he does not believe he needs any services. "As far as taking care of my daughter, like I think I do a good job. Honestly, I don't think I need any help on that."

{¶ 13} Appellant-father testified he signed papers in Ohio when mother gave birth to their first child to acknowledge his son's paternity, P.G.'s full sibling. He did not do the same when mother gave birth to their second child, P.G., in Kentucky. He could not explain why he never did that prior to the removal of P.G. He admitted that since 2017 he was aware from the prior case with appellee of permanently losing his parental rights to his son, but he never participated in that case. As a result, he was not aware he lost his parental rights to his son only six months earlier.

{¶ 14} Sometime in 2018 appellant-father testified he moved to Kentucky after accumulating domestic violence, assault, burglary, and traffic offenses in his record in Ohio. He did not actively conceal P.G.'s birth from appellee because he was in Kentucky with her and saw no reason to notify appellee: "I just didn't find anything [--] besides I wasn't in my son's case [--] was the only thing that is being used against me right now. I

5.

mean, other than that, I'm a good dad. I support her. I take care of her. She loves me and – you know, I was to take care of my daughter."

{¶ 15} The guardian ad litem testified that despite directly providing appellant-father with her business cards to discuss P.G., appellant-father never did. Appellant-father testified that he could not explain why he never contacted her about P.G.'s welfare since this case began.

{¶ 16} By judgment entry journalized on October 15, 2019, the juvenile court granted permanent custody to appellee for adoptive placement and planning and made a number of findings relevant to this appeal.

{¶ 17} Pursuant to R.C. 2151.414(E)(4), the juvenile court found by clear and convincing evidence appellant-father has "demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." The trial court further found:

> [Appellant-father] has demonstrated a lack of commitment to his child by failing to engage with case plan services in the previous case to address the concerns for his ability to parent. Even after the guardian ad litem provided [appellant-father] with her contact information during the present case, he took no steps to determine what options he had to better his situation and make an argument for reunification. [Appellant-father's] lack of cooperation with multiple cases and his denial of any need for services

6.

indicate to this Court that he is showing an unwillingness to provide an appropriate permanent home for the child.

{¶ 18} Pursuant to R.C. 2151.414(E)(11), the juvenile court found by clear and convincing evidence appellant-father had his "parental rights involuntarily terminated with respect to a sibling of the child pursuant to [applicable law] * * *, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child." The juvenile court further found that appellant-father "expressed very little insight into the situation, took no steps to become involved in the previous case despite having knowledge of it, and failed to articulate how he could provide a suitable environment for this child. [He] did not take advantage of the resources available to him."

{¶ 19} Pursuant to R.C. 2151.414(D)(1)(a), the juvenile court found by clear and convincing evidence, "The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child is such that only an award of permanent custody will maintain the bonds formed between caregiver and child, which the Court finds to be in the child's best interest." The juvenile court found that P.G. was currently in foster placement with a sibling, and "[a]ll of the children's needs are being met with foster parents."

7.

{¶ 20} Pursuant to R.C. 2151.414(D)(1)(d), the juvenile court found by clear and convincing evidence, "The child's need for a legally secure permanent placement can only be achieved through a grant of permanent custody to the agency." The ongoing worker and guardian ad litem testified permanent custody with appellee was in P.G.'s best interests.

{¶ 21} Pursuant to R.C. 2151.414(D)(1)(e), the juvenile court found by clear and convincing evidence, "that division * * * [(E)]11 of this section apply in relation to the parents and the child."

{¶ 22} Appellant-father set forth two assignments of error on appeal:

I. The trial court decision granting appellee Lucas County Children Services' motion for permanent custody was against the manifest weight of the evidence, pursuant to R.C. 2151.414(E)(11).

II. The trial court decision granting appellee Lucas County Children Services' motion for permanent custody was against the manifest weight of the evidence, pursuant to R.C. 2151.414(E)(4).

{¶ 23} We will address both assignments of error together, as they collectively challenge the juvenile court's decision on the permanent custody of P.G. was against the manifest weight of the evidence.

{¶ 24} Appellant-father argues for his first assignment of error he had good reasons for not being involved in the termination of his parental rights to P.G.'s full sibling. He traveled from state to state seeking work and thought the prior case with his

8.

son "was done and over with." In contrast, he argues he was involved in P.G.'s life from the beginning and had bonded with his child. When not incarcerated, he worked full-time and believed he could provide a safe, stable home for P.G. Appellant-father further argued that when compared to the prior case, "he had made significant changes in his life, and had taken a completely different approach to his involvement in this child's life (P.G.'s) such that the circumstances were no longer the same as during the prior case.

{¶ 25} As for the outstanding warrants leading to his recent arrest, appellant-father argued the domestic violence charges were dismissed by mother. In response to his failed visit to P.G., he argued "there was no testimony that he allegedly smelled like marijuana by those officers, and there was no evidence of a marijuana cigarette in his possession according to the testimony of the caseworker." In addition, he "was not arrested for drug possession, nor was he asked to drop a urine screen at that time."

{¶ 26} Appellant-father argues for his second assignment of error the trial court confused the mother's refusal to visit or support the child and attributed that attitude to him. Appellant-father argues, again, he "made significant changes in his life, and was substantially involved with his child, in a way he never demonstrated with the older child."

{¶ 27} In response to both assignments of error, appellee argues the record contains clear and convincing evidence to support the juvenile court's permanent custody award of P.G. to appellee as being in her best interest. The record supports the juvenile

9.

court's findings of specific factors to support its findings under R.C. 2151.414(E)(4) and (11).

{¶ 28} We review the juvenile court's determination of permanent custody under a manifest weight of the evidence standard. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, ¶ 37. We "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed." *Id*. We are mindful the juvenile court was the trier of fact and was "in the best position to weigh evidence and evaluate testimony." *Id.*

{¶ 29} Prior to terminating appellant's parental rights and granting permanent custody of P.G. to appellee pursuant to R.C. 2151.353(A)(4), the juvenile court must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to appellee is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *In re B.K.*, 6th Dist. Lucas No. L-17-1082, 2017-Ohio-7773, ¶ 16; R.C. 2151.414(B)(2).

{¶ 30} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in

10.

the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus. A judgment on permanent custody supported in the record by some competent, credible evidence by which the court could have formed a firm belief as to all the essential elements will not be reversed on appeal as being against the manifest weight of the evidence. *In re Denzel M.*, 6th Dist. Lucas No. L-03-1337, 2004-Ohio-3982, ¶ 8.

## I. R.C. 2151.414(E) Factors

{¶ 31} Pursuant to R.C. 2151.414(E), in determining whether a child cannot or should not be placed with the parents, the juvenile court "shall consider all relevant evidence" by clear and convincing evidence, including whether one or more of the factors described in R.C. 2151.414(E)(1)-(16) exists. The record shows the juvenile court found clear and convincing evidence pursuant to both R.C. 2151.414(E)(4) and (11). Although the juvenile court found two R.C. 2151.414(E) factors to support its holding, it needed to only find one. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50.

{¶ 32} It is undisputed the record shows appellant-father's parental rights were involuntarily terminated with respect to his son, the full sibling of P.G., in April 2019. The trial court expressly found that appellant-father failed to satisfy the provisions of R.C. 2151.414(E)(11), which states:

> In determining at a hearing held pursuant to [R.C. 2151.414(A)]
> * * * whether a child cannot be placed with either parent within a
> reasonable period of time or should not be placed with the parents, the court

11.

shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: * * * (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 33} Although the juvenile court's finding pursuant to R.C. 2151.414(E)(11) satisfied the requirements of the first prong for determining permanent custody, the court made further findings in the record by clear and convincing evidence pursuant to R.C. 2151.414(E)(4). We will not disturb those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the first prong of a permanent custody determination.

## II. Best Interests of the Child

{¶ 34} For the second prong, the juvenile court must consider "all relevant factors, including, but not limited to" the five enumerated factors described in R.C. 2151.414(D)(1)(a)-(e). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816,

at ¶ 52. "The statute is written broadly to allow a free-ranging inquiry by the juvenile court judge. All relevant best-interests factors are to be considered to allow the judge to make a fully informed decision before terminating parental rights, privileges and responsibilities." *In re Tiffany Y.*, 6th Dist. Sandusky No. S-03-004, 2003-Ohio-6203, ¶ 13-14. The juvenile court's discretion in determining the best interests of P.G. with an order of permanent custody is accorded the utmost respect due to the nature of the proceeding and the impact on the lives of the parties concerned. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, ¶ 37.

{¶ 35} The record shows the juvenile court determined the best interests of P.G. after considering R.C. 2151.414(D)(1)(a), (d) and (e), which state:

> In determining the best interest of a child at a hearing held pursuant to [R.C. 2151.414(A)] or for the purposes of [R.C. 2151.353(A)(4) or (5)] or [R.C. 2151.415(C)], the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of a child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child.
>
> * * *
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

13.

(e) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] apply in relation to the parents and child.

{¶ 36} Although the juvenile court's finding under R.C. 2151.414(D)(1)(a) satisfied the requirements of R.C. 2151.414(D)(1), the court made further findings in the record by clear and convincing evidence pursuant to R.C. 2151.414(D)(1)(d) and (e), where the other factors did not apply to the facts in this case. We will not disturb those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the second prong of a permanent custody determination.

{¶ 37} We do not find the juvenile court clearly lost its way to create such a manifest miscarriage of justice as to require reversal of the judgment regarding the permanent custody of P.G.

{¶ 38} Appellant-father's first and second assignments of error are not well-taken.

{¶ 39} On consideration whereof, we find the judgment of the juvenile court terminating appellant-father's parental rights and granting permanent custody of P.G. to appellee was supported by clear and convincing evidence. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant-father is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.            _____
                                                      JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.           _____
CONCUR.                                            JUDGE

_____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.