**[Cite as *In re Z.C.*, 2021-Ohio-763.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

In re Z.C., L.C.                                   Court of Appeals Nos. H-20-020
                                                                              H-20-021

                                                  Trial Court Nos. DNA 2018 00156
                                                                              DNA 2018 00157


                                                  **DECISION AND JUDGMENT**

                                                  Decided:  March 12, 2021

* * * * *

Christopher S. Clark, for appellant.

James Joel Sitterly, Huron County Prosecuting Attorney, and
Richard H. Palau, Assistant Prosecuting Attorney, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Huron County Court of Common

Pleas, Juvenile Division, which terminated the parental rights of appellant-mother, R.N.,

to the subject minor children, Z.C. and L.C., and granted permanent custody to appellee,

Huron County Department of Job & Family Services. The father of the minor children, E.C., Jr., whose parental rights were also terminated, did not appeal the judgment, and we will focus the facts relevant to appellant-mother. For the reasons set forth below, this court affirms the judgment of the juvenile court.

## I. Background

{¶ 2} On November 5, 2018, appellee filed two complaints in abuse and dependency regarding Z.C., who was then five years old, and L.C., who was then seven years old, respectively. Appellee alleged the father contacted local police "due to mother * * * appearing to be under the influence of methamphetamines and demonstrating out of control behavior." When the police arrived at the home father shared with appellant-mother and the minor children, the police observed drug paraphernalia accessible to the minor children and the home was "very unkempt" and "no food located in the home." The police arrested father and appellant-mother for child endangering.

{¶ 3} Due to the parents' incarcerations, the juvenile court immediately held an emergency shelter care hearing and granted appellee temporary custody of the minor children, who were placed with an approved foster family related to the father.

{¶ 4} On January 15, 2019, the juvenile court dismissed the dependency claims regarding the minor children and, following appellant-mother's admission to the remaining abuse claim, adjudicated both Z.C. and L.C. abused children by clear and convincing evidence and continued temporary custody with appellee. The juvenile court ordered appellant-mother to submit to substance abuse and mental health assessments and

2.

to successfully complete the recommended treatment plans. The juvenile court further ordered appellant-mother to submit to random substance abuse screens, obtain and maintain adequate housing, and obtain and maintain employment sufficient for her needs and the needs of the minor children.

{¶ 5} After a series of pretrial hearings continuing the juvenile court's temporary custody order with appellee and adding a couples counseling requirement, on February 5, 2020, appellee filed a motion for permanent custody of the minor children pursuant to R.C. 2151.413(A) and 2151.414(B)(1)(2), (D) and (E). Appellee argued that terminating the parental rights and awarding permanent custody with appellee was in the best interests of the children because the parents made little progress with their case plan services, which were developed "so reunification could occur." Appellant-mother's case plan included services for a history of domestic violence on appellant-mother and the children by the father, substance abuse with fentanyl and methamphetamines, mental health, lack of safe and stable housing and food access, and parenting decisions placing the children at risk of harm. Appellee alleged that the minor children could not be placed with either parent within a reasonable time.

{¶ 6} Then on March 13, 2020, appellee filed an amended motion for permanent custody of the minor children pursuant to R.C. 2151.413(A) and (D)(1) and 2151.414. Appellee alleged it had temporary custody of the minor children for 12 or more months of a consecutive 22-month period. Appellee argued that terminating the parental rights and awarding permanent custody with appellee is in the best interests of the children

3.

because the parents "made little progress on their case plan goals meaning reunification is no longer [an] option * * *." The goal is for permanent placement with an adoptive family, and the current foster family is interested in adopting the children.

{¶ 7} The dispositional hearing on permanent custody was held on September 8, 2020. The transcript of the hearing is in the record.

{¶ 8} The juvenile court heard extensive testimony from witnesses and admitted evidence in the record, including Abby Keefer, the Intensive Supervision Probation Officer for Norwalk Municipal Court, who supervised both parents since the minor children were removed from the home in November 2018; Jessica Priest, the foster mother for the past 13 months; Carrie Kimmet, the court-appointed guardian ad litem for the children since November 2018; and Chelsea Fuller, appellee's case worker assigned to this family since September 2019. Appellant-mother declined to testify, present any evidence, or to request an in-camera interview.

{¶ 9} By judgment entries journalized on September 15, 2020, the juvenile court granted permanent custody of Z.C. to appellee and of L.C. to appellee for adoptive placement and made a number of findings relevant to this appeal.

{¶ 10} Pursuant to R.C. 2151.414(B)(1) and (D), the juvenile court found by clear and convincing evidence that permanent custody with appellee is in the best interest of Z.C. and L.C.

{¶ 11} Pursuant to R.C. 2151.414(B)(1)(a) and (E)(1), the juvenile court found by clear and convincing evidence that "the children cannot be placed with either of their parents within a reasonable period of time and should not be placed with them."

{¶ 12} Pursuant to R.C. 2151.414(B)(1)(d) and (D)(1)(c), the juvenile court found by clear and convincing evidence that "the children have been placed in the temporary custody of [appellee] since 5 November 2018, or 22 months of a consecutive 22 month period."

{¶ 13} Pursuant to R.C. 2151.414(D)(1)(a) and (e), the juvenile court found by clear and convincing evidence that:

Although the case began with a focus on parents' substance abuse and unhealthy conditions of the home, [appellee] soon became aware of the extensive emotional trauma that the children have had to endure during their lives. For example, [L.C.] was forced by her father to watch her parents having sexual intercourse. She has described times when her family was on the run from "men from Mississippi." The children witnessed domestic violence in their home between their parents. These experienced have led to aggressive behavior and emotional outbursts from [L.C.], and, to a lesser degree, [Z.C.]. Both children regularly attend mental health counseling, and [L.C.] has been prescribed medication.

* * *

[Father] and appellant-mother have unfortunately not exercised all of the parenting time to which they were entitled, largely due to their periods of incarceration and then conflicting work schedules.

{¶ 14} Pursuant to R.C. 2151.414(D)(1)(b), the juvenile court found by clear and convincing evidence that:

The children's guardian ad litem acknowledges that [Z.C.] and [L.C.] appear to "genuinely enjoy" visits with the parents, but would never wish to live with them again. The guardian ad litem does not "believe that reunification is in the best interest of the children or that it could ever safely occur," and recommends that the permanent custody motions be granted.

{¶ 15} Pursuant to R.C. 2151.414(D)(1)(d), the juvenile court found by clear and convincing evidence that:

[Z.C. and L.C.] have bonded with their foster parents, the Priests, and are very bonded with each other. They appear to be beginning to realize they are safe in the home and will not be put in traumatic situations such as those they experienced in their parents' home. The structure and routine of the Priest foster home is beginning to lead to improved behavior and emotional stability for the children. The Priests have indicated they would be willing to adopt the children of the agency's Motions are granted.

{¶ 16} Pursuant to R.C. 2151.414(E)(1), (9) and (14), the juvenile court found by clear and convincing evidence that both appellant-mother and father have "failed

6.

repeatedly and continuously to remedy the issues that led to the removal of their children 22 months ago." The juvenile court further found:

The children were removed from their parents' home after [father] called the Willard Police Department because [appellant-mother] was under the influence of methamphetamines and acting out of control. The officers who responded discovered fail and drug paraphernalia accessible to the children in a homes that was unkempt and without food. Both parents were arrested for child endangering. [Appellee] exercised reasonable efforts to assist both [father] and [appellant-mother] to remedy their substance abuse and their lack of appropriate housing. Referrals were made for substance abuse counseling, and the agency provided both parents with job listings, housing listings and applications for government subsidized rent assistance. The agency even provide parents with bicycles to assist in transportation and looked into eligibility for an amnesty program that would lift sanctions for failing to pay child support. Despite these efforts, [father] and [appellant-mother] have still not located suitable housing and have not successfully completed substance abuse counseling. Both have been incarcerated during the course of these cases for violations of probation due to their use of illegal substances and failure to comply with treatment recommendations. Neither has successfully participated in or completed

7.

the couples counseling that was required by this Court as a further dispositional order on 25 April 2019.

* * *

[The children] have suffered profound emotional trauma as a direct result of the environment in which they lived and the experiences they were forced to endure.  [Father] and [appellant-mother] have demonstrated an inability to protect the children from this trauma, and, in fact, contributed to it.  It has taken the structure, routine and devotion of the current foster parents to begin [to] turn the tide for the children.  While [father] and [appellant mother] have participated in some substance abuse counseling, they have not completed a program.  [Appellant-mother] was terminated unsuccessfully from counseling as recently as August 2020.  The children's parents have been incarcerated for violations of probation and have suffered from relapses.  They are currently residing with another individual who is on probation for a drug offense and has submitted positive drug screens for his probation officer.  A person recently suffered from a drug overdose in the parents' home.  [Father] acknowledged to the assigned social worker that their present home was not appropriate.  After 22 months of [appellee] exercising reasonable efforts to reunify the family, the children now have a need for a legally secure placement so that the progress they have made in the Priest home will continue.

{¶ 17} Appellant-mother timely appealed the juvenile court's decisions, which were assigned case nos. H-20-020 (for Z.C.) and H-20-021 (for L.C.). On November 24, 2020, this court consolidated case No. H-20-021 under case No. H-20-020.

{¶ 18} Appellant-mother set forth one assignment of error in her appeal:

The trial court erred in finding by clear and convincing evidence that it is in the best interest of the children to terminate appellant-mother's parental rights and to award permanent custody of the children to Huron County Department of Job & Family Services.

## II. Permanent Custody Determination

{¶ 19} In support of her assignment of error, appellant-mother argues the juvenile court did not support the decision by clear and convincing evidence to terminate appellant-mother's parental rights as being in the best interests of Z.C. and L.C. Appellant-mother argues all relevant evidence should have been considered by the trial court, including her compliance "with both drug abuse and mental health counseling until May 2020," regularly attending visitations with the children from August 2019 to February 2020 due to the COVID-19 pandemic; her return to work in September 2020, the children's aggressive outbursts "appeared to stem from the lack of contact between the children and the natural parents"; and the children's excitement to re-establish in-person visits with the parents and the strong emotional bond between the children and their parents. Appellant-mother argues "she should have further opportunity to comply

9.

with the trial court's orders to continue to participate in the necessary personal counseling and that (sic) in to continuing efforts to provide a safe environment for her children."

{¶ 20} In response, appellee argues the trial court did not err as there was clear and convincing evidence in the record to support a finding that it is in the best interests of Z.C. and L.C. to terminate parental rights and award permanent custody to appellee. Appellee argued the evidence showed appellant-mother struggled to maintain drug sobriety and mental health counseling. The evidence further showed appellant-mother did not use the skills learned from her decision making and peer association seminar because she continued to use drugs and to associate with others who use drugs and alcohol. The evidence showed appellant-mother and father did not start, let alone complete, couple's counseling.

{¶ 21} We review the juvenile court's determination of permanent custody under a manifest weight of the evidence standard. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, ¶ 37. We "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed." *Id.* We are mindful the juvenile court was the trier of fact and was "in the best position to weigh evidence and evaluate testimony." *Id.*

{¶ 22} Prior to terminating appellant-mother's parental rights and granting permanent custody of Z.C. and L.C. to appellee pursuant to R.C. 2151.413(A) and

10.

2151.353(A)(4), the juvenile court must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child * * * cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to appellee is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *In re B.K.*, 6th Dist. Lucas No. L-17-1082, 2017-Ohio-7773, ¶ 16; R.C. 2151.414(B)(2).

{¶ 23} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established". *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus. A judgment on permanent custody supported in the record by some competent, credible evidence by which the court could have formed a firm belief as to all the essential elements will not be reversed on appeal as being against the manifest weight of the evidence. *In re Denzel M.*, 6th Dist. Lucas No. L-03-1337, 2004-Ohio-3982, ¶ 8.

## A. R.C. 2151.414(E) Factors

{¶ 24} Pursuant to R.C. 2151.414(E), in determining whether a child cannot or should not be placed with the parents, the juvenile court "shall consider all relevant evidence" by clear and convincing evidence, including whether one or more of the factors described in R.C. 2151.414(E)(1)-(16) exists. The record shows the juvenile court found clear and convincing evidence pursuant to R.C. 2151.414(E)(1), (9) and (14). Although

the juvenile court found multiple R.C. 2151.414(E) factors to support its decision, it needed to only find one.  *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50.

{¶ 25} R.C. 2151.414(E)(1) states:

In determining at a hearing held pursuant to [R.C. 2151.414(A)] * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: (1) following the placement of the child outside of the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose

12.

of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 26} The record indicates the juvenile court's orders approving appellant-mother's individualized case plans consistently contained the goal of reunification. R.C. 2151.412(E). Appellant-mother was bound by the terms of the case plans, and she admitted being offered her case plan services and, at times, being non-compliant with those services. R.C. 2151.412(F)(1). The record shows appellant-mother's non-compliance for drug abuse, domestic violence, mental health, and couple's counseling services. Although appellant-mother completed her decision making and peer association class, she failed to use those skills because she continued to associate with people who used drugs and alcohol.

{¶ 27} We reviewed the record and find the juvenile court's findings pursuant to R.C. 2151.414(E)(1) satisfied the requirements of the first prong for determining permanent custody. We do not find the juvenile court abused its discretion with those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the first prong of a permanent custody determination.

**B. Best Interests of the Child**

{¶ 28} For the second prong, the juvenile court must consider "all relevant factors, including, but not limited to" the five enumerated factors described in R.C. 2151.414(D)(1)(a)-(e). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 52. "The statute is written broadly to allow a free-ranging inquiry by the juvenile

13.

court judge. All relevant best-interests factors are to be considered to allow the judge to make a fully informed decision before terminating parental rights, privileges and responsibilities." *In re Tiffany Y.*, 6th Dist. Sandusky No. S-03-004, 2003-Ohio-6203, ¶ 13-14. The juvenile court's discretion in determining the best interests of Z.C. and L.C. with an order of permanent custody is accorded the utmost respect due to the nature of the proceeding and the impact on the lives of the parties concerned. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, at ¶ 37.

{¶ 29} The juvenile court determined the best interests of Z.C. and L.C. after considering R.C. 2151.414(D)(1)(a) through (e), which state:

In determining the best interest of a child at a hearing held pursuant to [R.C. 2151.414(A)] or for the purposes of [R.C. 2151.353(A)(4) or (5)] or [R.C. 2151.415(C)], the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of a child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty two-month period and, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] apply in relation to the parents and child.

{¶ 30} Although the juvenile court's finding under R.C. 2151.414(D)(1)(a) satisfied the requirements of R.C. 2151.414(D)(1), the court made further findings in the record by clear and convincing evidence pursuant to R.C. 2151.414(D)(1)(b) through (e). We will not disturb those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the second prong of a permanent custody determination. We do not find the juvenile court clearly lost its way to create such a manifest miscarriage of justice as to require reversal of the judgment regarding the permanent custody of Z.C. and L.C.

{¶ 31} Appellant-mother's assignment of error is not well-taken.

15.

### III. Conclusion

**{¶ 32}** On consideration whereof, we find the judgment of the juvenile court terminating appellant-mother's parental rights and granting permanent custody of Z.C. and L.C. to appellee was not against the manifest weight of the evidence.

**{¶ 33}** The judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.            _____
                                                      JUDGE

Thomas J. Osowik, J.           

                                                _____
Christine E. Mayle, J.                                                         JUDGE
CONCUR.

                                                  _____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.