[Cite as *In re A.E.*, 2025-Ohio-1607.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

In re A. E., B. E.

Court of Appeals No. WM-25-001
WM-25-002

Trial Court No. JUV20233040
JUV20233041

**<u>DECISION AND JUDGMENT</u>**

Decided: May 5, 2025

* * * * *

Rachael Sostoi, for appellee.

Autumn Adams, for appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an expedited, consolidated appeal from two judgments by the

Williams County Court of Common Pleas, Juvenile Division, which terminated the

parental rights of appellant-mother, Br.E., to the subject minor children, A.E. and B.E.,

and granted permanent custody of the children to appellee, Williams County Department

of Job and Family Services. The father of the minor children, whose parental rights were

also terminated, did not appeal the judgments, and we will limit the discussion below to

appellant-mother. For the reasons set forth below, this court affirms the juvenile court's judgments.

## I. Background

{¶ 2} Since 2012 these children have been involved with appellee in prior matters and experienced a prior, temporary removal from their appellant-mother's home due to her substance abuse and neglect. In this matter, on March 24, 2023, appellee received a report that the family was homeless. The children stayed with family while appellant-mother, a known drug user, sought housing. During the ensuing investigation and this litigation, appellant-mother would test positive 11 times for a variety of illegal drugs and fail to find permanent, stable housing or stable employment.

{¶ 3} On April 11, 2023, appellant-mother consented to place the children in the care of their paternal grandparents in an out-of-home safety plan. The children remained with the paternal grandparents until November 29, 2023, when the juvenile court granted appellee temporary custody of the children for foster care after the court-appointed guardian ad litem ("GAL") testified about concerns with the children continuing to reside with the paternal grandparents.

{¶ 4} Meanwhile, on June 2, 2023, appellee filed two complaints[1] alleging neglect under R.C. 2151.03(B) of 11-year-old B.E. and 13-year-old A.E. due to the lack of parental care because of the faults or habits of appellant-mother. Appellee requested the

---

[1] The matter for A.E. was assigned case No. 20233040, and the matter for B.E. was assigned case No. 20233041.

2.

children be adjudicated neglected and order protective supervision by appellee to be in the best interest of the children. The complaint summarized the family's history with appellee dating back to 2012. Appellee's permanent case plan goals were for appellant-mother's reunification with the children upon completing the recommended case plan services, obtaining stable employment, obtaining stable housing, regularly communicating with appellee, and maintaining regular, supervised visits with the children.

{¶ 5} On August 1, 2023, the juvenile court held a hearing and adjudicated the children neglected under R.C. 2151.03(B). Appellant consented to the juvenile court's neglect finding.

{¶ 6} At no point in this matter did appellant-mother object to the juvenile court's award of temporary custody of the children, first to the paternal grandparents on August 1, 2023, subject to appellee's protective supervision, then to appellee on November 27, 2023, upon the GAL's testimony and recommendation to remove them from the temporary custody of the paternal grandparents.

{¶ 7} Nor did appellant-mother make substantial progress with her case plan services such that, as she argues in her assignment of error, she would benefit from additional time to work on reunification with A.E. and B.E. On June 3, 2024, following a two-day hearing held on May 20 and May 31, the juvenile court denied appellee's May 1 request to extend the proceedings by six months (a "bypass motion") for a lack of "compelling reasons." Although appellee sought the bypass to seek temporary placement

3.

with the children's aunt,[2] the juvenile court found that, despite the significance of the

one-year mark in the litigation, appellant-mother remained resistant to meeting case plan

by failing to engage in each of her case plans and to follow the recommendations for:

substance abuse, mental illness, parenting classes, monthly visits, maintaining contact

with appellee, drug screening, and obtaining stable housing. The juvenile court explained

the importance of the children to obtain a stable outcome.

> We're at a [desperate] time[.] [Y]ou're at the one (1) year mark and if it doesn't dawn on you that this is the most significate period of time for this Court to be listening to you and taking in what you're saying and trying to figure out what the heck's going on. I, I don't think that you grasp that.
> . . . .
> But where you really significantly fail in this process is understanding that you can blame the Agency as much as you want okay. Your children are the most important thing and should be to you. It is incumbent upon you to take steps whether you like the Agency or not, whether you like the Guardian Ad Litem or not, whether you want to get mental health or substance abuse [help], whether you should stop using any type of drug, all of that. [T]he bigger picture in it is where do our children fit in this and how can I work toward getting them in that position.
> . . .
> So as I look at this to the detriment of your children you've made other choices and as I said I cannot figure out what the underlining reason is. These kids have been attached to you and they now are, are in these situations and I'm sure at the ages that they are which again is fourteen (14) and twelve (12) that they, they aren't going to be able to understand why

---

[2] Also on June 3, the children's aunt and husband filed a motion to intervene seeking placement of the children with them. Then on June 12, appellee filed a motion for legal custody with the children's older sister based on an approved April 17 home study. Hearings on those motions were held on June 20, 2024. The juvenile court denied the motion to intervene, and then appellee withdrew its motion for legal custody. The juvenile court ordered the children to remain in appellee's temporary custody. Subsequently, the children's maternal grandparents filed a motion to intervene on September 5, 2024, seeking legal custody, which the juvenile court denied on October 2 after a hearing.

4.

their parents haven't been successful. . . . I balance that [reaching the one-year mark] with the fact that these children more than anything need stability they need to know and feel and understand that they're, they're very important and that they have a right there's certain rights that they have and they have the right to that stability, they have the right to know that they're not gonna be living out of a car they have a right to know that someone's gonna care for them and put them in baseball and put them in volleyball camp and let them be successful in school.

. . .

The Court finds that the Agency has made reasonable efforts in their continued effort to return the children and reunify. The children will remain in the temporary custody of the Department of Job and Family Services. I find that to be in the best interest of the children. As for whether this bypass should be granted I do not find that there are compelling reasons I will not grant the bypass. The . . . Agency will need to make steps as to what that means for the filing of placement options and so forth from here on. That will be the Order of the Court.

{¶ 8} Appellant-mother did not object to the denial of the bypass motions.

{¶ 9} This underlying motions for the juvenile court judgments being appealed occurred on July 8, 2024, when appellee filed motions for permanent custody of each child under R.C. 2151.413 and 2151.414. The hearing on permanent custody was eventually held on November 1, 2024.[3] The juvenile court heard testimony from five witnesses for appellee: a certified scientist with Forensic Fluids Laboratories who testified to appellant-mother's lab-confirmed results for illegal drugs four of seven times, a visitation supervisor and parent educator at Shalom Mediation and Counseling Services

---

[3] The original permanent custody hearing testimony and evidence received on September 30, and October 2, 2024, were vacated by the juvenile court on October 15, 2024, in order to create a de novo record on November 1. Among the testimony vacated was appellant-mother's consent on October 2, to awarding permanent custody of the children to appellee.

5.

who testified to appellant-mother's inconsistent visitation and the impact of cancellations on the children, the foster mother, appellee's case worker, the court-appointed GAL, and appellant-mother on cross-examination. The juvenile court admitted two exhibits into evidence. Appellant-mother then rested without presenting any evidence.

{¶ 10} After the parties submitted final briefs, on December 11, 2024, the juvenile court granted appellee's motions for permanent custody of A.E. and B.E. In its judgments, the juvenile court made several relevant findings.

{¶ 11} Pursuant to R.C. 2151.414(B)(1)(a), the juvenile court found by clear and convincing evidence, after considering all relevant evidence, that A.E. and B.E. cannot be placed with appellant-mother within a reasonable time or should not be placed with her. The juvenile court addressed the following factors.

{¶ 12} Pursuant to R.C. 2151.414(E)(1), the juvenile court found that, following the placement of A.E. and B.E. outside their home and notwithstanding reasonable case planning and diligent efforts by appellee to assist appellant-mother to remedy the problems that initially caused the children to be placed outside the home, appellant-mother failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside their home. In reaching this determination, the juvenile court "considered parental utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to maintain parental duties." Specifically, the juvenile court found:

6.

The conditions causing the children's removal from [appellant-mother] was homelessness and significant drug abuse by [appellant-mother]. These conditions caused the children's basic needs to be neglected and unable to be fulfilled by [appellant-mother]. At the time of the hearing neither of the conditions that caused the removal of the children were remedied. [Appellant-mother] admitted that [she] remained homeless, living out of [her] vehicle, friend's homes or with family members. Financial assistance, available housing lists and landlord lists were offered to [appellant-mother] in an attempt to remedy the issue of stable housing. With all the resources either provided or available to them, [appellant-mother] did not remedy this condition. In addition to the homelessness and possibly the most significant, is [appellant-mother's] drug use. [She] appeared at the Court hearings and knew that at all hearings drug screening would be required. [She] continued to use and test positive. [She] chose not to go through treatment. [She] chose not to go to parenting classes. [She] chose not to stay in contact with [appellee] case workers nor the GAL. And [she] chose to visit [her] children when it was convenient to [her]. [She] did not make the choice at any time during these cases to treat [her] addictions, to become sober and to secure safe and appropriate housing.

Having been through the child welfare system before and having [her] children removed from their home, at the beginning of this case [appellant-mother] had one of two options. Either individually or together as a couple [appellant-mother] could choose to support [father], aggressively work the case plan, seek treatment and comply with the case plan requirements which would lead [her] to reunification with [her] children, or [she] would allow others to provide for [her] children, not engage and let the children become legal strangers. The children are old enough to know which option [appellant-mother] choose. Unfortunately, [appellant-mother], neither individually nor [with father], chose the route of reunification.

{¶ 13} Pursuant to R.C. 2151.414(E)(2), the juvenile court found appellant-mother's chemical dependency was so severe that it made appellant-mother unable to provide an adequate permanent home for the children at the present time and, as anticipated, within one year after the court held the hearing in this matter. The juvenile court specifically found:

At the time the reports were made in 2023, [appellant-mother was] in MAT (medically assisted treatment). [She] did not continue in that program but while in the program, at [her] peril [she] continued to use illegal substances. That shows that each of [her] addictions is so severe that [she was] using illegal substances while under treatment and [she] could not follow the treatment plan. [Appellant-mother] stopped [her] treatment in April 2023 and no evidence was presented that showed that [she] re-engaged at any time thereafter.

{¶ 14} The juvenile court listed appellant-mother's verified drug use between lab-tested results and urinalysis screens at every scheduled court hearing as follows:

- April 6, 2023 -positive for methamphetamines, amphetamines, cocaine
- May 25, 2023 - negative for all substances
- August 1, 2023 - positive for buprenorphine
- August 22, 2023 - negative for all substances
- September 22, 2023 - positive for cocaine, oxycodone, fentanyl
- November 29, 2023 - negative for all substances
- December 28, 2023 - positive for cocaine and fentanyl
- January 27, 2024 - positive for cocaine
- February 8, 2024 - positive for buprenorphine, cocaine, THC
- May 20, 2024 - positive for buprenorphine, THC
- May 31, 2024 - positive for THC
- September 30, 2024 - positive for buprenorphine, cocaine, fentanyl, THC
- October 2, 2024 - positive for buprenorphine, cocaine, fentanyl, THC
- November 1, 2024-positive for buprenorphine, cocaine and fentanyl

{¶ 15} Pursuant to R.C. 2151.414(E)(4), the juvenile court found that appellant-mother demonstrated a lack of commitment toward A.E. and B.E. by actions showing an unwillingness to provide an adequate permanent home for the children by failing to regularly support, visit and communicate with the children when she was able to do so. Specifically, the juvenile court found:

8.

[Appellant mother has] failed to take the steps to secure a stable home to have a place for the children to have their basic needs met. The GAL reported that the children have issues with the visits due in part to the inconsistency. This has caused great turmoil for the youngest child particularly, including issues of anger expressed toward the Mother. [She has] not acted in the best interests of the children in [her] inconsistent contact with the children.

{¶ 16} Pursuant to R.C. 2151.414(E)(14), the juvenile court found that appellant-mother for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the children.

{¶ 17} Pursuant to R.C. 2151.414(D)(1), the juvenile court found by clear and convincing evidence that it was in the best interest of A.E. and B.E. to grant permanent custody to appellee and to terminate the parental rights of appellant-mother. The juvenile court reached this decision after considering all relevant factors:

including the interaction and interrelationship of the children with [appellant-mother], siblings, relatives, and foster caregivers, and any other person who may significantly affect the children [R.C. 2151.414(D)(1)(a)]; the custodial history of the children, including whether the children have been in the temporary custody of [appellee] for twelve or more months of a consecutive twenty-two month period [R.C. 2151.414(D)(1)(c)]; the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of Permanent Custody to [appellee, R.C. 2151.414(D)(1)(d),]; and whether any of the factors in divisions (E)(7) to (11) of ORC 2151.414 apply in relation to [appellant-mother, R.C. 2151.414(D)(1)(e)].

The children have been residing outside of [appellant-mother's] home since the beginning of the case. They were first with family (paternal grandfather) and then due to a disruption and the children's desire to move, the children were placed in foster care. The children are doing well in their foster care placement. B.E. has some significant mental health issues and an unrealistic view of his [appellant-mother] which will need to be addressed through intensive treatment. The list of placement options, family and kin, has been exhausted. The foster mother has expressed a willingness to keep

9.

the children in her care and continue their contact with their older sibling and her baby. A.E. expressed a desire to remain at the foster care home.

{¶ 18} With respect to R.C. 2151.414(D)(1)(b), the juvenile court also found, "The Court conducted separate in-camera interviews of the children on October 2, 2024 and found that B.E. did not have sufficient reasoning ability to express his wishes and concerns. The Court found that A.E. did have sufficient reasoning ability to express her wishes and concerns, which were not in conflict with the GAL' s recommendations."

{¶ 19} Appellant-mother timely appealed the juvenile court's decisions.[4] On January 17, 2025, this court ordered the consolidation of the appeals. Appellant-mother set forth one assignment of error: "More time remained on the case for Mother to continue to work on case plan services."

## II. Permanent Custody Determination

### A. Standard of Review

> Given that R.C. 2151.414 requires that a juvenile court find by clear and convincing evidence that the statutory requirements are met, we agree with those appellate courts that have determined that the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*In re Z.C.*, 2023-Ohio-4703, ¶ 11.

---

[4] The appeal of case No. 20233040 was assigned appellate case No. WM-25-001, and the appeal of case No. 20233041 was assigned appellate case No. WM-25-002.

10.

{¶ 20} Here, appellant-mother argues that more time remained on the case for her to work on case plan services. Therefore, we review the juvenile court's determination of permanent custody under a manifest-weight-of-the-evidence standard. We must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts to create such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered. *Id.* at ¶ 14. We are mindful that the juvenile court, as the trier of fact, was in the best position to weigh the evidence and evaluate testimony so every reasonable presumption must be made in favor of its finding of facts. *Id.*

## A. Analysis

{¶ 21} Prior to granting appellee's motions for permanent custody of A.E. and B.E., the juvenile court must make specific findings by clear and convincing evidence pursuant to R.C. 2151.414(B)(1). *In re A.M.*, 2020-Ohio-5102, ¶ 18. First, "that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies." *Id.* Second, that the grant of permanent custody to appellee is in the best interest of the children. *Id.*, citing R.C. 2151.414(B)(1).

{¶ 22} For the first prong, the juvenile court determined by clear and convincing evidence that R.C. 2151.414(B)(1)(a) applied to appellant-mother. As previously reviewed, we find the juvenile court's evidentiary findings stated in its judgments for the first prong are supported by clear and convincing evidence. Since the juvenile court determined the first prong pursuant to R.C. 2151.414(B)(1)(a), the juvenile court must also consider the

11.

presence of any R.C. 2151.414(E) factors that would indicate A.E. and B.E. cannot be placed with appellant-mother within a reasonable time or should not be placed with her. *In re T.G.*, 2023-Ohio-2576, ¶ 36 (6th Dist.). Here, the juvenile determined by clear and convincing evidence that R.C. 2151.414(E)(1), (2), (4), and (14) applied to appellant-mother, but the juvenile court needed to only find one factor. *In re C.F.*, 2007-Ohio-1104, ¶ 50.

{¶ 23} We interpret appellant-mother's sole assignment of error as a challenge to the juvenile court's finding under R.C. 2151.414(E)(1). *See, e.g., In re C.W.,* 2020-Ohio-6869, ¶ 48 (6th Dist.). Under R.C. 2151.414(E)(1), the juvenile court found by clear and convincing evidence that, despite reasonable case planning and diligent efforts by appellee to assist appellant-mother to remedy the problems that initially caused the A.E. and B.E. to be placed outside the home, appellant-mother failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside their home: homelessness and significant drug abuse. The juvenile court found 11 instances in a 19-month period that appellant-mother tested positive for illegal substances. The 19-month period corresponded with appellee's ongoing investigation of, and oversight of, appellant-mother's neglect of the children. Appellant-mother does not challenge the juvenile court's adjudication on August 1, 2023, of A.E. and B.E. as neglected children, nor does she dispute her drug use, her lack of safe and appropriate housing, or her failure to engage in her case plan services. As the matter proceeded to disposition and the permanent custody determination of the children, appellant-mother rejected the path to reunification with the

12.

children by continuing to test positive for illegal drugs, remaining homeless, choosing to inconsistently visit her children, and failing to use the resources and services either provided or available to her through her case plan.

{¶ 24} Despite the foregoing specific findings by clear and convincing evidence pursuant to R.C. 2151.414(B)(1), appellant-mother focuses on alleging a violation of R.C. 2151.413(D)(1) to seek reversal of the juvenile court's determination to award appellee permanent custody of A.E. and B.E. Appellant-mother argues she had another eight months "to continue to work case plan services" and B.E wanted reunification. Appellant-mother argues she "should have been able to use those last 8 months to demonstrate her work on case plan services." The result is "a manifest miscarriage of justice because almost 8 months still remained for Mother to work towards reunification."

{¶ 25} Appellee responded that R.C. 2151.415(A)(4) controlled in this matter because appellee had temporary custody of the children and was required to file its motions for permanent custody of them no later than 30 days prior to the date set for the hearing on those motions. The juvenile court awarded appellee temporary custody of A.E. and B.E. on November 29, 2023. Appellee then moved for permanent custody of A.E. and B.E. on July 8, 2024, and the hearing on those motions was set for, and held on, November 1, 2024.

{¶ 26} We find appellant-mother's argument for eight more months to "work towards reunification" with the children is "too little, too late" under the circumstances. *In re T.J.*, 2024-Ohio-110, ¶ 21 (6th Dist.). There was clear and convincing evidence that appellant-mother failed to engage with, let alone to make progress with, her case plan

13.

services. The juvenile court was not required to prolong the custody proceedings for appellant-mother to accept and cooperate in the case planning process. *See In re May.R.*, 2019-Ohio-3601, ¶ 30 (6th Dist.). Appellee reminds us that appellant-mother failed to object to the denial of the appellee's bypass motions, which would have afforded her additional time to engage in case plan services. The permanent custody law does not contemplate holding A.E. and B.E. in custodial limbo beyond the juvenile court's permanent custody decision on December 11, 2024, for appellant-mother to finally accept and cooperate with her case plan services. *In re T.J.* at ¶ 22.

{¶ 27} In order to satisfy the second prong of the permanent-custody test, the juvenile court must consider relevant factors," including the nonexhaustive list under R.C. 2151.414(D)(1)(a) through (e). *In re A.M.*, 2020-Ohio-5102, at ¶ 19. "Consideration is all the statute requires." *Id.* at ¶ 31. We find the juvenile court satisfied the second prong by considering all of the R.C. 2151.414(D)(1)(a) through (e) factors.

{¶ 28} Upon review we find the juvenile court's awards of permanent custody of A.E. and B.E. were not against the manifest weight of the evidence, and the court did not clearly lose its way to create such a manifest miscarriage of justice as to require reversal of the judgments. The juvenile court's determinations were supported by clear and convincing evidence in the record.

{¶ 29} Appellant-mother's sole assignment of error is not well-taken.

14.

### III. Conclusion

**{¶ 30}** The judgments of the Williams County Court of Common Pleas, Juvenile Division, terminating appellant-mother's parental rights to A.E. and B.E. and granting permanent custody of A.E. and B.E. to appellee are affirmed. Appellant-mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                         _____

                                           JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, J.                           _____
CONCUR.                                               JUDGE

                                           _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.